```
DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN
APPELLATE DIVISION
```

| | | |
|---|---|---|
| **WINFRED DONOVAN, CONRAD GRANT, PEARL NEAVES, JOYCE RHYMER, DEBBIE HERBERT, JOSEPH GREAUX, BEATRICE GUMBS, MILLICENT SMITH, KENNETH NESBITT, and SYLVIA SLACK,** | ) ) ) ) ) ) ) ) | |
| *Appellants,* | ) ) | **D. C. Civ. App. No. 2006/0175** |
| v. | ) ) ) ) | **Super. Ct. Civ. No. 94/681** |
| **A.H. RIISE GIFT SHOP, INC.,** | ) ) | |
| *Appellee.* | ) ) ) | |

On Appeal from the Superior Court of the Virgin Islands,
the Honorable Rhys S. Hodge presiding.

**Considered: November 20, 2015**
**Filed: January 21, 2016**

**BEFORE: WILMA A. LEWIS,** Chief Judge of the District Court of the Virgin Islands;
**RAYMOND L. FINCH,** Senior Judge of the District Court of the Virgin Islands; and **ROBERT A. MOLLOY,** Judge of the Superior Court of the Virgin Islands, sitting by designation.

**ATTORNEYS:**

**Desmond Maynard, Esq.**
St. Thomas, U.S.V.I.
        *For Appellants*

**Geoffrey Wolfe, Esq.**
St. Thomas, U.S.V.I.
        *For Appellee*

## MEMORANDUM OPINION

**PER CURIAM**

In this appeal, Appellants Winfred Donovan, Conrad Grant, Joseph A. Greaux, Beatrice Gumbs, Debbie Herbert, Pearl C. Neaves, Kenneth Nesbitt, Sylvia Slack, Millicent Smith, and Joyce L. Rhymer (collectively, "Appellants")—ten former employees at A.H. Riise Gift Shop, Inc. ("A.H. Riise") on St. Thomas, U.S. Virgin Islands—challenge the August 11, 2006 Memorandum and Order of the Superior Court of the Virgin Islands granting A.H. Riise's Motion for Summary Judgment and dismissing Appellants' Complaint. Joint Appendix ("JA") 1322-27.[1] For the reasons that follow, we will vacate the August 11, 2006 Memorandum and Order of the Superior Court and remand this matter for further proceedings.

## I.   BACKGROUND AND PROCEDURAL HISTORY

On August 29, 1994, Appellants filed a Complaint in Superior Court alleging that their collective discharge from employment at A.H. Riise on June 17, 1994 was illegal and improper. JA 13-16.[2] They asserted a claim under the Virgin Islands Wrongful Discharge Act, 24 V.I.C. § 76 ("WDA"), as well as claims for negligent and/or intentional infliction of emotional distress, breach of the duty of good faith and fair dealing, bad faith, and punitive damages. *Id.*

After A.H. Riise filed an Answer, JA 17-20, discovery ensued during 1995 and 1996. JA 2-5. On May 13, 1998, A.H. Riise filed its Motion for Summary Judgment. JA 58-80. In its Statement of Uncontested Material Facts, A.H. Riise asserted that, as a result of its combined net

---

[1] When the Complaint was originally filed in 1994, the Superior Court was known as the Territorial Court. The Virgin Islands Legislature renamed the court in 2004, substituting "Superior" in place of "Territorial." *See* 2004 V.I. Sess. Laws 179 (Act No. 6687, § 1(b) (amending 4 V.I.C. § 2). In light of this change, this Court will refer to the trial court as the Superior Court.

[2] Appellants had worked at A.H. Riise for as few as three years, JA 148, to as many as almost thirty years. JA 160.

2

operating loss of $2,918,910.00 for fiscal years ending September 1993 ("FY 1993") and September 1994 ("FY 1994"), it laid off twelve of its 106 retail employees on June 17, 1994, including the ten Appellants. JA 58-59.

As an exhibit to the Motion, A.H. Riise attached an Affidavit of William D. Kelly ("Kelly"), who had been "acting in the capacity of chief financial advisor for A.H. Riise Gift Shop, Inc. . . . since 1993" and who possessed "knowledge regarding the retail operations of [A.H. Riise]." JA 75. In his affidavit, Kelly averred that A.H. Riise "operate[d] various retail operations and stores" on St. Thomas; that A.H. Riise experienced a net operating loss of $1,139.377.00 for FY 1993; that A.H. Riise experienced a net operating loss of $1,779.533.00 for FY 1994; and the "combined net operating loss suffered by [A.H. Riise] for the years ending September 1993 and September 1994" was $2,918,910.00. *Id.* Kelly concluded that "[a]s a result of the economic hardship suffered by [A.H. Riise] for the years ending September 1993 and September 1994, [A.H. Riise] was forced to lay off twelve (12) of its employees, which included the [Appellants] herein." JA 76. A "Consolidated Statement of Operations" for FY 1993 and 1994, and a 1993 Virgin Islands U.S. Corporation Income Tax return, were attached to the Kelly Affidavit. JA 78, 80. On the line "Income (Loss) From Operations," the Consolidated Statement showed the $1,139,377 loss in FY 1993 and the $1,779,533 loss in FY 1994 to which Kelly had referred. JA 78. A.H. Riise argued that its loss of over two million dollars over a two-year period constituted an "economic hardship," and that "a reduction in force of sixteen (16) employees is a general cutback"—thereby satisfying the WDA's requirement that permitted terminations caused by a company's economic hardship. JA 63.[3]

_____

[3] The reference to sixteen employees appears to be a typographical error. In his Affidavit, Kelly asserted that a total of twelve employees were terminated. JA 76.

A.H. Riise also claimed that Appellants failed to state a claim for negligent infliction of emotional distress as no bodily harm was alleged, JA 64-65; that Appellants failed to state a claim for intentional infliction of emotional distress because no extreme and outrageous conduct was intentionally or recklessly inflicted on Appellants, and none of them suffered serious mental distress, JA 65-69; and that laying off employees as a result of economic hardship was not outrageous conduct warranting punitive damages, JA 69-70. Finally, A.H. Riise asserted that Appellants failed to state a claim for breach of the duty of good faith and fair dealing, since this cause of action applied only to at-will employees, and Appellants did not fall into that category. JA 70-71.

In their Opposition to A.H. Riise's Motion for Summary Judgment, Appellants responded, *inter alia*, that genuine issues of material fact existed concerning whether their terminations were motivated by economic hardship. JA 81-302.[4] They pointed out that, while the company relied on the Kelly Affidavit which provided that the layoffs occurred as a result of the economic hardship suffered by A.H. Riise in FY 1993 and 1994, Kelly testified at his deposition that he did not know why Appellants were terminated:

Q:  And do you know anything about the employment and termination of these employees who are named as plaintiffs in the case?

A:  No.

Q:  You don't know anything about their employment?

A:  No. I am not familiar with either of the employees themselves or their records, the reasons for the termination or anything like that. At the time, whenever it was in '94, I had finished my consulting project and did not begin coming here again until August of '94 on a monthly basis, so I wasn't actually physically here at the time of the lay-offs.

---

[4] Appellant Donovan questioned, for example, whether financial problems motivated the dismissals because, just prior to his termination, A.H. Riise hired a new store manager and two other cashiers, and was renovating and upgrading its stores. JA 88.

JA at 100, quoting JA 195. Citing *Penn v. V.I. Beach Hotel*, Civ. No. 87-225 (D.V.I. 1990), in which the District Court rejected a company's evidence of economic hardship because it failed to provide evidence of "(1) the rise and fall of hotel revenue; (2) past and future budgets; and (3) the exact savings to be achieved by the alleged cutback in personnel," Appellants claimed that A.H. Riise similarly failed to provide credible evidence of economic hardship. JA 101.

Appellants asserted that punitive damages were appropriate because, although they were told they were being laid off, they were nevertheless urged to sign Releases which would discharge A.H. Riise "from any future liability for its illegal conduct" towards them—which a jury could find was deceptive and outrageous. JA 102-03. They did not oppose the Motion for Summary Judgment on their negligent/intentional infliction of emotional distress, bad faith, and breach of the implied contract of good faith and fair dealing claims.

On October 20, 1998, A.H. Riise filed its Reply. JA 303-58. It again referred to its "net operating loss" in FY 1993 and 1994 totaling over two million dollars as evidence of the financial hardship it suffered. JA 308. A.H. Riise also claimed that the "post [1989 Hurricane] Hugo effects on tourism coupled with other factors led to a substantial decline in sales and a financial situation that did not improve for years." JA 308-09. The company cited the deposition transcript of Edric Jones, its Manager of Operations, who testified that approximately one week before the employees were laid off, he was called into a meeting, learned the company was experiencing "very difficult financial problems," and that the company decided to lay-off some employees. JA 308, citing JA 332. In addition, A.H. Riise attached a four-paragraph Affidavit of Vice President Filippo Cassinelli, the substance of which echoed the Kelly Affidavit. JA 315-16.[5]

---

[5] Mr. Cassinelli stated that A.H. Riise's "financial records" showed that the company suffered a "combined net operating loss" for fiscal years 1993 and 1994 of $2,918,910.00, and that the

In November 1998, Appellants filed a "Motion to Compel Discovery, Motion to Show Cause as to Why Defendant Should Not Be Held in Contempt and Motion for Sanctions." JA 893-932. The Motion indicated that Appellants had sought responses to certain requests made in their Second, Third, and Fourth Requests for Production of Documents, as well as to certain interrogatories, dating from January 1995, to no avail, JA 893, 896, and that Appellants' Third Renewed Motion for Sanctions, filed in January 1997, was still pending before the court. JA 897. Appellants claimed that A.H. Riise "refused to produce the financial documents [they] have requested," including A.H. Riise's "tax returns, financial statements, corporation dividend reports, and Quarterly Reports from January 1, 1991 through December 31, 1995." JA 900. Appellants thus argued that A.H. Riise should not be permitted to proffer the defense of economic hardship or maintain that Hurricane Hugo, in 1989—five years prior to Appellants' terminations—was the motivating factor for discharging Appellants, if the company did not provide the requested documents. JA 931. In view of previous court orders compelling A.H. Riise to respond to their discovery requests, and A.H. Riise's continued refusal to produce those documents, Appellants further argued that "stronger and more severe sanctions" against A.H. Riise were needed to compel the company "to adhere to the applicable rules of procedure" and the court's orders. *Id.*

A hearing on the pending motions took place on April 15, 1999. JA 1062-1275. The trial court indicated that it would obtain its own court-appointed financial expert under Fed. R. Evid. 706 since the Motion for Summary Judgment turned on the economic standing of A.H. Riise. JA 1063-64, 1066. The court granted summary judgment in favor of A.H. Riise on the "emotional distress" cause of action (intentional/negligent infliction of emotional distress), JA 1224; allowed

---

"economic hardship . . . was the only reason [A.H. Riise] was forced to lay off twelve (12) of its employees, which included the Plaintiffs herein." JA 315-16.

6

depositions of three principals of A.H. Riise; and ordered the company to turn over additional financial documents and personnel records from January 1990 to June 30, 1995. JA 1243, 1253, 1265-66.

Thereafter, the Superior Court issued an Order appointing its expert witness in this case. JA 1276-77. In November 1999, Appellants moved to compel compliance with the court's April 1999 discovery order and sought sanctions against A.H. Riise for its "repeated refusal to comply with the Court's Orders compelling discovery in this case." JA 1278.

The next document contained in the docket report is a May 2006 notice reassigning the case to then-Superior Court Judge Rhys Hodge and a notice for a status conference. JA 11. After identifying the pending motions, establishing the existence of an *in camera* letter to the court from the court-appointed economist, and allowing the parties to supplement their filings, the court indicated that it would resolve the outstanding motions. JA 1299-1321.

On August 11, 2006, the Superior Court issued a Memorandum and Order granting A.H. Riise's Motion for Summary Judgment. JA 1322-27. As a "threshold matter," the court stated that Appellants "indicated that they voluntarily executed a Release of Claims against the Defendant in which they released Defendant from liability regarding any claims related to cessation of employment, even under the Virgin Islands Wrongful Discharge Act[.]" JA 1324.[6] The Memorandum and Order noted that even though Plaintiffs received "a certain amount of money as severance pay" and waived their rights to assert the claims they had made in this action, the court "reasonably infer[red] that Plaintiffs might have been unaware of the effect of the Release" and proceeded to analyze the merits of their WDA claim. JA 1324-25.

---

[6] The court was mistaken in this regard because the record reveals that none of the Appellants had signed the Releases proffered by A.H. Riise. JA 216-35.

7

In its analysis, the court applied the burden-shifting approach used in Title VII cases, based on the approach followed—at that time—in *Rajbahadoorsingh v. Chase Manhattan Bank*, N.A., 168 F. Supp. 2d 496 (D.V.I. 2001). The court found that:

> Plaintiffs have failed to demonstrate that it was more likely than not that the Defendant acted in violation of the WDA. Plaintiffs have offered no proof that the Defendant was economically stable other than self-serving statements that the Defendant performed cosmetic improvements in the store, and verbally communicated that one of the stores had "made over and above the plan that they had for the season."

JA 1326. (quoting Plaintiffs' Opposition to Motion for Summary Judgment). The court went on to say that, "to the contrary [A.H. Riise] has proffered rebuttal evidence that each Plaintiff was informed of the fact that the store was undergoing financial hardship and would need to lay off ... several employees," which was corroborated through deposition testimony and insurance applications filed by six of the Plaintiffs to collect unemployment benefits in which they listed "lay-off" as the basis for separation from employment. *Id.* In "further support of its claim that Plaintiffs were laid-off," the court found that A.H. Riise had "produced direct evidence of economic hardship, specifically offering tax returns for the years 1990-1993 to demonstrate the decline in sales and profits for that period." JA 1326-27.

Finally, the court added that it had

> independently appointed, at its own expense, an accounting firm to perform an economic analysis of the Defendant based on consolidated corporate income tax returns. The forensic accountant did not assess the activity of subsidiary companies neither did the forensic accountant analyze economic activity of non-principal activities. [sic] However, the forensic accountant found that the parent company of A.H. Riise suffered a decrease in sales and gross profit percentage for the three years prior to 1994 when the Plaintiffs were discharged.

JA 1327. Based on the cited evidence, the trial court granted A.H. Riise's Motion, concluding that A.H. Riise "demonstrated an absence of a genuine issue of fact because the Defendant has articulated legitimate reasons for Plaintiffs' separation from the Defendant store that do not amount

8

to a wrongful discharge under the statute." *Id.* The trial court did not address the Appellants' other causes of action for bad faith, breach of the implied covenant of good faith and fair dealing, and punitive damages in the Memorandum and Order.

Appellants filed a Notice of Appeal on September 8, 2006. JA 1328-29.

## II.   JURISDICTION, STANDARD OF REVIEW, LEGAL STANDARD

### A.  Jurisdiction

This Court has jurisdiction over appeals of final judgments and orders of the Superior Court filed before January 29, 2007—the date on which the Supreme Court of the Virgin Islands was certified to officially assume appellate jurisdiction over the Superior Court. *See* V.I. Code Ann. tit. 4, § 33; Revised Organic Act, 48 U.S.C. § 1613a(a); *Milligan v. Khodra*, 2013 WL 5379380, at *2 (D.V.I. App. Div. Sept. 25, 2013). Here, the trial court granted A.H. Riise's Motion for Summary Judgment and dismissed the action in August 2006. Because that Order is a final judgment entered prior to January 29, 2007, this Court has jurisdiction over the appeal.

### B.  Standard of Review; Summary Judgment Legal Standard

"'The trial court's grant of summary judgment is afforded plenary review.'" *Vanterpool v. CTF Hotel Mgmt. Corp.*, 2013 WL 5888263, at *2 (D.V.I. App. Div. Nov. 1, 2013) (quoting *Wing-It Delivery Servs. v. V.I. Cmty. Bank*, 47 V.I. 506, 509 (D.V.I. App. Div. 2005)). "In reviewing the Superior Court's grant of summary judgment, [the appellate court] applies the same test the Superior Court should have utilized[.]" *Pedro v. Ranger Am. of the V.I., Inc.*, 2015 WL 4066707, at *2 (V.I. July 1, 2015). Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a)[7]; *Pedro*, 2015 WL 4066707, at *2. A fact is material under Rule 56 "if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In ruling on a motion for summary judgment, the court must draw all inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Simpson v. Golden Resorts, LLLP*, 2012 WL 1673892, at *9 (V.I. Apr. 13, 2012).

### C. Wrongful Discharge Act Legal Standard

Here, the Virgin Islands WDA provides the applicable substantive law.[8] *See Pedro*, 2015 WL 4066707, at *2 ("In order to determine whether the Superior Court's grant of summary judgment was appropriate here, we must analyze the court's decision in the context of the substantive law governing the cause of action."). Significantly, at the time the trial court ruled on

---

[7] The Federal Rules of Civil Procedure are made applicable to the Superior Court of the Virgin Islands through Rule 7 of the Rules of the Superior Court: "The practice and procedure in the Superior Court shall be governed by the Rules of the Superior Court and, to the extent not inconsistent therewith, by the Rules of the District Court [and] the Federal Rules of Civil Procedure[.]" Super. Ct. R. 7.

[8] After enumerating nine specific bases pursuant to which an employer may discharge an employee, the WDA provides, in pertinent part:

> (c) Any employee discharged for reasons other than those stated in subsection (a) of this section shall be considered to have been wrongfully discharged; however, nothing in this section shall be construed as prohibiting an employer from terminating an employee as a result of the cessation of business operations or as a result of a general cutback in the work force due to economic hardship, or as a result of the employee's participation in concerted activity that is not protected by this title.

24 V.I.C. § 76(c).

A.H. Riise's summary judgment motion, both the Superior Court and District Court were applying the *Rajbahadoorsingh* burden-shifting analysis when assessing WDA claims—which both the District Court and Supreme Court of the Virgin Islands subsequently found to be incorrect. Under this now-rejected approach, a plaintiff carried the initial burden of establishing a *prima facie* case of wrongful termination.[9] Once a *prima facie* case was established, "a presumption of wrongful discharge [arose] against the employer" and "the burden of production shift[ed] to the employer to articulate some legitimate, statutorily-approved reason for the plaintiff's discharge" by "producing rebuttal evidence." *Rajbahadoorsingh,* 168 F. Supp.2d at 505. The employer could "satisfy this burden by introducing evidence which, if true, would permit the conclusion that there was a non-wrongful reason for the termination. . . . The employer need[ed] only [to] raise a genuine issue of fact regarding whether the plaintiff was wrongfully discharged." *Id.* After the employer offered one or more of the statutorily-approved reasons for its actions, the burden of production then shifted back to the plaintiff to show, by a preponderance of the evidence, that the proffered reason was pretextual. *Id.* In other words, under *Rajbahadoorsingh*, the plaintiff bore the burden of persuasion in pursuing a WDA claim.

While this appeal was pending, the District Court, in a November 2014 published opinion—*Gumbs-Heyliger v. CMW & Assocs. Corp.*, 73 F. Supp. 3d 617 (D.V.I. 2014)—analyzed the structure of the WDA in adjudicating a summary judgment motion.[10] The District Court

---

[9] To establish a *prima facie* case, a plaintiff was required to prove that: "(1) he was an employee; (2) of a covered employer; (3) he was discharged; and (4) the discharge was wrongful." *Rajbahadoorsingh*, 168 F. Supp. 2d at 504-05 (footnotes omitted).

[10] In *Maynard v. Rivera*, 675 F.3d 225, 230-31 (3d Cir. 2012), the Third Circuit questioned—but did not analyze on the merits—the applicability of the *Rajbahadoorsingh* standard when applied to a WDA cause of action. In *Celestine v. St. Croix Fin. Ctr.*, 2014 V.I. LEXIS 68 (V.I. Super. Ct. Aug. 27, 2014), the Superior Court also questioned the applicability of the *Rajbahadoorsingh* standard, stating that it would instead "simply apply the plain language of the [WDA] statute to

concluded that the *Rajbahadoorsingh* burden-shifting approach—in particular, with regard to the

burden of proof under the WDA—was inconsistent with the structure, design, and object of the

statute. The District Court held that the

> burden of persuasion properly lies with the employer to prove that the employee
> was discharged for one of the nine permissible reasons under the [WDA]. . . .
> Accordingly, the Court finds that once the employee establishes a *prima facie* case
> of wrongful discharge, the burden of persuasion shifts to the employer to show by
> a preponderance of the evidence that the employee was discharged for a permissible
> reason under the WDA.

*Id.* at 623. Subsequently, in the context of determining whether an employee had stated a claim

under the WDA, the Supreme Court of the Virgin Islands also rejected the *Rajbahadoorsingh*

approach, *see Rennie v. Hess Oil Virgin Islands Corp.*, 2015 WL 525941, at *7 (V.I. Feb. 6, 2015),

and *Pedro*, 2015 WL 4066707, at * 3-4 (V.I. July 1, 2015), and joined the *Gumbs-Heyliger* Court,

*see* 73 F. Supp. 3d at 621-23, in holding that "the permissible grounds for discharge under the

VIWDA are more appropriately considered affirmative defenses that must be raised by a defendant

in its answer, as a plaintiff 'is not required to anticipate in his complaint any affirmative defenses

[the defendant] might raise in its answer.'" *Pedro*, 2015 WL 4066707, at *4 (quoting *Rennie*, 2015

WL 525941, at 6 n.12); *Rennie*, 2015 WL 525951, at *7 ("We also agree with the Superior Court

and the District Court that the Legislature intended that section 76 be construed to simply mean

what it says.").

### III.   **ISSUES PRESENTED**

Appellants contend that "genuine issues of material fact exist concerning whether [their]

termination was motivated by economic hardship" and therefore the Superior Court should not

---

Plaintiff's claim." *Id.* at *6 n.1. The court in *Celestine*, however, did not otherwise analyze the
burden of persuasion as it found that—under either standard—its "decision would be the same in
light of the wide-ranging factual disputes over the circumstances of Plaintiff's dismissal." *Id.*

have granted A.H. Riise's Motion for Summary Judgment. Appellants' Brief at 18-26. Preliminarily, they take issue with the Superior Court's finding that they voluntarily executed a Release of Claims against A.H. Riise. *Id.* at 20-21. They also claim that the Superior Court erroneously weighed the evidence by dismissing as "self-serving" the admissions made by A.H. Riise in a general company-wide meeting shortly before their terminations that the business was performing well economically. *Id.* at 22-26. With regard to the proof of the company's economic condition, Appellants pointed out, *inter alia*, the critical inconsistency between the statement in the affidavit by the company's chief financial advisor, William Kelly, attributing the employees' terminations to the company's economic hardship, and his deposition testimony in which he stated he did not know anything about the reason the employees were terminated. *Id.* at 24-25. Appellants also argue that the Superior Court's reliance on an expert economic report which they had no opportunity to review—but which was in the possession of the Superior Court—violated their Due Process rights. *Id.* at 26-30.

A.H. Riise responds that it showed that Appellants were terminated as part of a "'general cutback in the work force due to economic hardship'" resulting from the two-year loss of "nearly $3,000,000.00 in Appellee's retail operations, a fact evidenced and demonstrated to the Superior Court by Appellee's certified consolidated tax returns for the years 1990-1993 that were submitted to the Court[.]" Appellee's Brief at 12 (quoting 24 V.I.C. § 76(c)).

## IV. <u>DISCUSSION</u>

We find that the trial court's analysis of the WDA claim presents significant problems in the application of the WDA standard, which requires that the Memorandum and Order of the Superior Court be vacated and remanded for further proceedings. In addition, we find that the trial

13

court's Memorandum and Order misapplied the summary judgment standard, which also adversely affected its analysis.

### A. WDA Cause of Action

As noted above, the Superior Court in the instant matter followed the *Rajbahadoorsingh* burden-shifting legal standard when adjudicating the WDA claim—a framework that both the District Court and the Supreme Court of the Virgin Islands rejected while this case was pending on appeal. Accordingly, the Memorandum and Order is flawed as a result of this analysis which, *inter alia*, improperly placed the ultimate burden of persuasion on Appellants.

In *Gumbs-Heyliger*—the first extensive analysis into the appropriate burden of persuasion under the WDA—the District Court held that the burden falls on the employer to "show by a preponderance of the evidence that the employee was discharged for a permissible reason under the WDA." *Gumbs-Heyliger,* 73 F. Supp. 3d at 623. As indicated above, the holding in *Gumbs-Heyliger* was adopted by the Supreme Court of the Virgin Islands in *Rennie* and *Pedro,* although in different procedural contexts. *See Rennie*, 2015 WL 525941, at *7 (rejecting the *Rajabahadoorsingh* analysis and holding that "to state a claim under section 76, Rennie only needed to plead that HOVIC was his employer and that HOVIC wrongfully discharged him, and was not required to anticipate in his complaint any affirmative defenses HOVIC might raise in its answer, such as the permissible grounds for discharge set forth in section 76(a)(1)-(9)."); *Pedro,* 2015 WL 4066707, at *4 (also rejecting *Rajabahadoorsingh* analysis in context of reversing Superior Court's decision—which denied amendment of complaint's WDA claim alleging constructive discharge—and finding that proposed amended complaint properly stated WDA cause of action).

14

Accordingly, when assessing a WDA claim in a § 76(c) context, the proper analysis would require that an employer show, by a preponderance of the evidence, that it suffered economic hardship which caused it to undergo a general cutback in its workforce. An employee does *not* have to show by a preponderance of the evidence—as previously required by *Rajbahadoorsingh* and adopted by the trial court here—that the termination was improper because the employer was not undergoing an economic hardship. *See Gumbs-Heyliger,* 73 F. Supp. 3d at 622 (observing that, under Virgin Islands law, burden of proving an affirmative defense in a civil case was on defendant, and "party against whom the affirmative defense is asserted is not required to prove a negative"); *Rennie,* 2015 WL 525941, at *7 ("[Plaintiff is] not required to anticipate in his complaint any affirmative defenses [the defendant] might raise in its answer[.]'"); *Pedro*, 2015 WL 4066707, at *4 ("Inasmuch as the VIWDA creates a statutory presumption that an employment discharge is wrongful, requiring a plaintiff to specifically plead and prove that he was wrongfully discharged (as opposed to simply discharged) would require a plaintiff to essentially establish a negative—that he wasn't discharged for one of the permissible grounds under the VIWDA.").

The Superior Court should have the first opportunity to apply the appropriate summary judgment analysis in this case. *See Kerrigan v. Otsuka Am. Pharm. Inc.*, 560 F. App'x 162, 166 (3d Cir. 2014) (in context of a state-law employment termination case, "prudence" dictated that one of the employment claims be remanded so the import, if any, of a recent appellate opinion could be "considered in the first instance" by the trial court.); *Viola v. Borough of Throop*, 387 F. App'x 219, 222 (3d Cir. 2010) (vacating order granting summary judgment on employment claim so trial court could reconsider claim in light of intervening Third Circuit case); *see also Vanterpool v. Gov't of V.I.*, 2015 WL 4723651, at *10 (V.I. Aug. 10, 2015) (remanding case to Superior Court

"so that it may perform a proper summary judgment analysis in the first instance."). A remand to the Superior Court is therefore appropriate under the circumstances here.

## B. Other Legal Issues

In addition to the flawed WDA analysis, the Memorandum and Order is problematic in several other respects. We point out these concerns in order for the Superior Court to take note of them in its analysis on remand.

First, as stated above, the WDA provides the applicable substantive law against which Appellants' claim must be assessed. *See Pedro*, 2015 WL 4066707, at *2. Title 24 of the Virgin Islands Code, Section 76(c)—relied upon by A.H. Riise to show that the discharges were not wrongful—provides that an employer must affirmatively show that the "general cutback in the work force" was "due to economic hardship." 24 V.I.C. § 76(c). In this regard, the following cases are instructive.

In *Island Block Corp. v. Dep't of Labor*, 2001 WL 1223739 (D.V.I. App. Div. July 23, 2001), this Court concluded that "[m]ere assertions that business was slow, without more, do not constitute economic hardship," and that a company must show "that it suffered a financial loss" or "meaningful evidence of its economic status." *Id.* at *2. Similarly, in *Prentice v. Officemax N. Am.*, 2012 WL 898323 (D.V.I. Mar. 15, 2012), the District Court found that while the defendant engaged in a company-wide reorganization of its workforce, it was "less clear" that the reorganization constituted a "cutback in the workforce" or that it was "due to economic hardship." *Id.* at *3. While the court found that the reorganization "bore some relationship to lowering costs," it refused to "conclude that . . . some element of economic motivation automatically constitutes 'economic hardship' within meaning of the statute," and required the employer to "show some meaningful evidence of its financial condition." *Id.* (citing *Island Block*, 2001 WL 1223739 at *2).

16

By contrast, in *Bachelor v. Pitt Des-Moines, Inc.*, 2003 WL 553266 (Terr. Ct. Feb. 3, 2003), on a petition for review, the Superior Court found that an Administrative Law Judge had provided substantial evidence that petitioner's discharge was not wrongful. The employer, through its accountant, provided testimony that the layoff of five employees was a business necessity, and the determination of which employees were to be laid off was based on skill and availability of work. The employer also submitted an affidavit showing a decrease in business revenue which would cause an economic hardship if it did not lay off the five employees. The court found that the ALJ had factually supported his determination that petitioner's dismissal was due to economic hardship. *Id.* at *3.

In the foregoing cases, courts have found that the company was required to present sufficient evidence showing that it was actually experiencing economic hardship under 24 V.I.C. § 76(c) to justify terminating employees. In this case, however, the "direct evidence of economic hardship" produced by A.H. Riise, according to the trial court, was the "tax returns for the years 1990-1993" which "demonstrate[d] the decline in sales and profit for that period." JA 1327. The record, however, shows that the company produced its tax return *only* for FY 1993. JA 80. The trial court also made a general, conclusory statement that A.H. Riise demonstrated a "decline in sales and profits" for 1990-1993, but the court never articulated what that decline amounted to, and thus what the "economic hardship" actually was that the company suffered. Moreover, as discussed below, the trial court never cited any evidence *linking* the termination of the Appellants to the economic hardship allegedly suffered by A.H. Riise during that time period—a connection required by the plain language of the statute. *See* 24 V.I.C. § 76(c) (stating that employees may be terminated as result of a "general cutback in the work force *due to* economic hardship") (emphasis

17

added). Thus, the Superior Court opinion does not reflect a cogent analysis of how A.H. Riise demonstrated that it satisfied § 76(c).

Relatedly, the trial court must adhere to the summary judgment standard which requires that, if a genuine dispute of material fact exists, summary judgment is not appropriate. The record evidence relied upon by *A.H. Riise* that linked the terminations to the company's economic status was the affidavit of William Kelly, the acting chief financial advisor. Kelly referred to the Consolidated Statement of Operations; noted that the "combined net operating loss" suffered by the company during FY 1993 and 1994 was $2,918,910.00; and concluded that, "[a]s a result of the economic hardship suffered by [A.H. Riise] for the years ending September 1993 and September 1994, [A.H. Riise] was forced to lay off twelve (12) of its employees, which included the [Appellants] herein." JA 76. However, Appellants emphasized both to the trial court and on appeal that Kelly's conclusion in his Affidavit was undermined by statements he made during his subsequent deposition in which he asserted that he was "not familiar with either the employees themselves or their records, *the reasons for the termination* or anything like that." JA 195 (emphasis added). Kelly added that he had served as the financial officer on a "consulting" basis, and was not on island when the terminations occurred. *Id.* Thus, the court must evaluate and determine whether Kelly's deposition testimony raises a genuine issue of material fact as to whether the terminations were caused by the economic conditions allegedly suffered by the company. The Superior Court did not acknowledge or discuss Kelly's deposition testimony in its Memorandum Opinion and the effect it may have had on A.H. Riise's motion for summary judgment.

In sum, on remand, the Superior Court must review both the evidence of economic hardship and its link to the terminations to determine whether A.H. Riise carried its burden of persuasion under 24 V.I.C. § 76(c), as a matter of law.

Second, the Superior Court "may not weigh the evidence or determine the credibility of witnesses" when assessing a motion for summary judgment. *Pedro*, 2015 WL 4066707, at *2 (citing *Perez v. Ritz-Carlton (V.I.)*, 59 V.I. 522, 527 (V.I. 2013)). In this case, however, the Superior Court did just that when it rejected Appellants' statements quoting A.H. Riise managers about the positive economic condition of the store (made shortly before Appellants were terminated) as "self-serving." *See* JA 1326 (finding that Appellants had "offered no proof that the Defendant was economically stable other than self-serving statements that the Defendant performed cosmetic improvements in the store, and verbally communicated that one of the stores had 'made over and above the plan that they had for the season.'"). Case law gives credence to Appellants' argument that, by characterizing Appellants' statements as "self-serving," the trial court erroneously weighed the evidence on summary judgment and made impermissible credibility determinations. *See Dow Chemical Canada, Inc. v. HRD Corp.*, 587 F. App'x 741, 746 n.4 (3d Cir. 2014) (rejecting argument that party's statements are "self-serving" as being "of no consequence for purposes of Rule 56 of the Federal Rules of Civil Procedure. We do not engage in credibility determinations at the summary judgment stage.") (citing *Simpson v. Kay Jewelers*, 142 F.3d 639, 643 n.3 (3d Cir. 1998)).

In a similar vein, the Supreme Court of the Virgin Islands has opined that "[i]t is well settled that 'a single, nonconclusory affidavit or witness's testimony, when based on personal knowledge and directed at a material issue, is sufficient to defeat summary judgment or judgment as a matter of law.'" *Burd v. Antilles Yachting Servs., Inc.*, 57 V.I. 354, 360, 2012 WL 3329249,

at *3 (V.I. 2012) (quoting *Cappuccio v. Prime Capital Funding, LLC,* 649 F.3d 180, 189-90 (3d Cir. 2011)). "'This remains true even if the affidavit is 'self-serving' in the sense of supporting the affiant's own legal claim or interests.'" *Id.* (quoting *Cappuccio,* 649 F.3d at 189-90). Thus, even if the Superior Court viewed Appellants' deposition testimony—in which they quote statements made by company representatives concerning the company's rosy economic picture days before the terminations—as self-serving, the opinion does not reflect adherence to the legal principle enunciated in *Burd.*

Moreover, the trial court must "'view all inferences from the evidence in the light most favorable to . . . the nonmoving party.'" *Pedro,* 2015 WL 4066707, at *2 (quoting *Machado v. Yacht Haven U.S.V.I., LLC,* 61 V.I. 373, 379 (V.I. 2014)). However, the Superior Court here did not consider or credit Appellants' evidence that Kelly stated in his deposition that he was unaware of the reasons for the terminations, which contradicted his affidavit that the company's economic losses caused the terminations. When viewed in the light most favorable to the nonmoving party, it is questionable whether summary judgment could have been granted to A.H. Riise on this record.

Finally, the trial court relied on the report of the financial expert it had hired, under Fed. R. Evid. 706, to support its conclusion that summary judgment was warranted. JA 1064. According to the trial court, the expert found that A.H. Riise's parent company "suffered a decrease in sales and gross profit percentage for the three years prior to 1994 when the Plaintiffs were discharged." JA 1327.

Rule 706 requires a court to "inform the expert of the expert's duties" either in writing or at a conference where "the parties have an opportunity to participate." Fed. R. Evid. 706(b). The process is described as follows:

> After the court informs the expert of his duties and the expert commences work, the court and the parties should remain available to answer the expert's questions

20

or refine his instructions where necessary. As a safeguard against bias, these communications should be conducted in a manner open to all the parties. This means that ex parte communications between the judge and the expert or between a party and the expert are discouraged. Such communications may pose ethical issues for the judge or attorney involved. In fact, ex parte communications between the judge and the expert may justify disqualification of the judge. . . .

Once the court-appointed expert has completed his work the question then becomes how do the parties learn of the expert's findings. Rule 706 provides that the witness must advise the parties of the witness' findings and may be deposed. The expert may provide notice of findings through a written report, a conference with the parties, a court hearing at which the expert testifies, a deposition, or some combination of these. The goal is to provide the parties with sufficient notice to permit them to deal with those findings at trial or at a hearing on a motion for summary judgment.

Victor James Gold, 29 *Federal Practice & Procedure Evid.* § 6305 (1st ed. 1997) (footnotes omitted).[11]

Contrary to the provisions of Rule 706, the expert's report in this case was never made available to the parties, and neither party had an opportunity to examine or challenge the expert's methodology or conclusions. Upon learning that the parties had not seen the expert report, the trial court did not make it available to them for examination before it issued its Memorandum and Order, JA 1310—which relied, in part, on this *ex parte, in camera* document in granting summary judgment.

It is a generally accepted principle that courts may not decide the merits of a case based on *ex parte* evidence. *See Pack v. Beyer,* 157 F.R.D. 219, 223 (D.N.J. 1993) ("Our adversarial system generally does not ordinarily tolerate *ex parte* determinations on the merits of a civil case."); *see*

---

[11] When this case was being adjudicated in Superior Court, the Virgin Islands Code contained a statute regarding the procedure to be followed when the court appointed an expert witness in an action. *See* 5 V.I.C. § 914. The statute, which was repealed in 2010, was consistent in relevant respects with Fed. R. Evid. 706, in that it described how an expert was to be appointed, and indicated that the judge was to determine the duties of the expert and so inform the expert at a conference attended by the parties. The statute also provided that the expert was to advise the parties of his/her findings and could be called to testify by the judge or any party.

*also Vining v. Runyon*, 99 F.3d 1056, 1058 (11th Cir. 1996) (holding that trial court "erred in using information obtained in its *ex parte, in camera* examination of personnel files to judge the merits of [plaintiff's] claim, and we remand the case for a reconsideration of [plaintiff's] summary judgment motion."); *Abourezk v. Reagan*, 785 F.2d 1043, 1060-61 (D.C. Cir. 1986) ("It is a hallmark of our adversary system that we safeguard party access to the evidence tendered in support of a requested court judgment. The openness of judicial proceedings serves to preserve both the appearance and the reality of fairness in the adjudications of United States courts. It is therefore the firmly held main rule that a court may not dispose of the merits of a case on the basis of *ex parte, in camera* submissions."). Thus, the Superior Court must ensure access by the parties to evidence upon which it will rely in adjudicating the merits of the summary judgment motion.

In sum, in addition to applying the correct WDA standard on remand, the Superior Court must avoid contravening the various legal principles discussed above.

## V.    CONCLUSION

For the foregoing reasons, we vacate the Superior Court's August 11, 2006 Memorandum and Order granting summary judgment to A.H. Riise, and remand this matter to the Superior Court for further proceedings consistent with this Opinion.

Appellants never challenged on appeal the dismissal of their negligent/intentional infliction of emotional distress cause of action on summary judgment, JA 1203, 1224-25, which is now final. However, in addition to the WDA claim, the Superior Court should adjudicate the Appellants' remaining claims upon remand.